Bland, Judge,
delivered tlie opinion of tlie court:
After allowing certain claims in appellants’ application for a patent relating to fluid transmission, tlie Primary Examiner of the United States Patent Office refused to allow claims 1 to 4, inclusive, and 7 to 12, inclusive, of which claims 1 and 11 are illustrative and read:
I. In a water supply system comprising a main conduit and a pump for maintaining a water pressure, means for suppressing pulsations of the water pressure due to the puinp comprising a side branch from said conduit adapted to retain a volume of entrapped air when the main conduit is filled with water, the dimensions of said branch being proportioned with respect to the normal water pressure to prodnee resonance in said branch at the pulsation frequency of said pump.
II. In a fluid transmission system, a conduit in which fluid may be conveyed, and means associated therewith for suppressing the undesired effects of periodic pressure impulses in said fluid comprising a closed chamber of uniform cross-sectional area opening into said conduit, said chamber containing a quantity of gas which v/ill just fill said chamber at normal atmospheric pressure P0 and a mass of said fluid, the length 1 of said chamber being defined by the equation

in which P is the steady pressure of the enclosed gas, Y is the adiabatic constant for said gas, p is the density of said fluid and w is 2’ x times the frequency' of the periodic impulse to be suppressed.'
Upon appeal to the Board of Appeals, the action of the examiner was affirmed, the grounds of the affirmance by the board being substantially the same as those relied upon by the examiner.
The alleged invention involved relates to the suppression of periodic pressure impulses of certain types in a fluid transmission system, and is especially applicable to water supply systems in Avhich gravity tanks are used. According to appellants’ application, they accomplish the suppression of the periodic pressure impulses by,a device which they term a vibration filter and'wliich is attached *844 to a transmission pipe. It operates under fixed conditions of fluid pressure and is supposed to absorb the pressure impulses or forced vibrations produced by some driving agency, such as a pump. The pressure pulsations from a pump are necessarily periodic, occuring-at a definite interval of time depending upon the speed of the pump, the number of propeller blades, etc. Appellants state: “For example, if the pump is rotating at 1800 revolutions per minute and has four blades, the pressure impulses will have a frequency of 120 cycles per second.” These pressure impulses of the water are imparted to the pipe which is set into vibration at the frequency of the pressure pulsations, and appellants further state “and possibly at" harmonic frequencies thereof.” The vibrations of the pipe give-rise to disturbing noises which, appellants state,’ are “of the same pitch as the vibrations.”
Appellants’ device consists essentially of one or more short sections of pipe having closed outer ends which branch off from the main pipe, preferably near the pump. They show them extending-vertically from a horizontal section of the main pipe. When the main ¿ñpe is filled with water, a certain amount of water will enter the side branches and at the same time a certain amount of air is entrapped within the branch. Of the length of the side branch,, appellants state:
In accordance with the invention, the length of the side branch is related: in a particular manner to the water pressure and to the speed of the pump, both of which are fixed quantities for any given installation. By this proportioning', a certain predetermined volume of air is entrapped and the water within the side branch rises to a predetermined height thereby providing; within the branch an air cushion of a particular degree of elasticity and a water piston having a particular mass. This combination makes a vibrating system which has a natural oscillation period dependent on the mass of firewater and the elasticity of the air, antT'-the desired result of vibration suppression is achieved by proportioning the amount of air and the amount of water so that the natural period of oscillation coincides with the period of the impulses set up by the pump. The exact relationship between the volume of air and the volume of water is obtained by simply choosing the right length of pipe for the side branch.
The references relied upon are:
Hopkins, 616188, Dee. 20, 1898.
Thoré, 912632, Feb. 16, 1909.
Johnson, 962355, June 21, 1910.
McFarland, 1590587, June 29, 1926.
Gallagher, 1712791, May 14, 1929.
Timbs et al., 1776937, Sept. 30, 1930.
Pomeroy, 1779448, Oct. 28, 1930.
Thomas (Ger.), 156250, Nov. 17, 1904.
The Hopkins patent relates to apparatus for preventing bursting of water pipes by freezing, and shows a water pipe with a plurality of side branches.
*845 The patent to Thoré shows a water conduit and a side branch which “serves as an air chamber to relieve the shock from the sudden checking of the flow of water.”
Johnson cushions the hydraulic pressure in feed pipes shown, and discloses a main conduit connected with a surge tank and also a tank supplied with ivater and air under pressure.
McFarland is the main reference and this patent relates to a pneumatic alleviator for hydraulic pumps. The pump shown has a discharge pipe having a side branch. To this side branch is connected a cylinder. Another cylinder is adjustably held to the first cylinder so as to form an air chamber into which compressed air may be introduced through a pipe. A hollow plunger separates the air in the second chamber referred to from the fluid in the discharge pipe.
Gallagher shows a relief valve which is used in connection with oil pumping lines.
Timbs et al. shows a slush pump water pressure shock absorber with a blow-off valve in which there is a cylinder which forms a branch off from a main fluid conduit. The patent shows a spring-pressed plunger in the cylinder.
Pomeroy shows a device for suppressing surges which includes a pump having a discharge pipe with side branch. The side branch leads to a surge dissipating device of the air cushion type.
The patent to Thomas is a German patent and relates to a multiple pipe line which has connecting extension parts at intervals which carry a closable cleaning tube. Each of these connecting extensions constitutes an air cushioning device in the conduit system.
The examiner rejected all the claims, except claim 12, upon, McFarland when taken either singly or in connection with the patent to Johnson. Claim 3 ivas rejected by the examiner for the same reasons but The examiner further stated:
Claim 3 was rejected on the references and for the reasons just above mentioned, since embodying merely the use of a plurality of air cushioning devices of the type shown by McFarland and Johnson, such plurality being broadly indicated to be old in a fluid distribution conduit by the patent to Hopkins and [the] German [patent] to Thomas.
With further reference to the rejection of claims 1, 2, 4, and 7 to 11, inclusive, the examiner also stated that he regarded the claims as “unpatentable over the structure of McFarland, taken either singly or in view of any of the patents to Johnson, Thoré, or Gallagher.”
With reference to claims 3, 9, and 12, the examiner also stated:
Claims 3 and 12 were each rejected on the references and for the reasons just above mentioned, since embodying merely the úse of a plurality of air cushioning devices of the general type shown by McFarland, especially when modified as above indicated, such plurality being broadly indicated to be old *846 in a fluid distribution conduit by the patent to Hopltins, and the German patent to Thomas.
With respect to the rejection of claim 9 on the references and for the reasons set forth hereinabove, attention is directed to lines 67 to 76 of page 2 of McFarland’s specification.
Said claim 9, which, is not copied here, contains the limitation: “and means for introducing additional gas into said chamber whereby the relative volumes of the fluid and gas content within said chamber may be regulated.”
Appellants show in figure 3 of their drawings a modified form of their invention which contains a tank with a pipe having a valve leading to the said branch, which permits introducing additional gas into the chamber when desired.
The examiner cites lines 67 to 76 of page 2 of .the McFarland specification, which he does not quote but which read:
* * * An. extension pipe 31 is carried by the cylinder 25 and is provided witli a tbree-way pipe connection needle valve 32 wliicli serves three purposes, namely, as a means of depositing lubricating oil in the chamber above the plunger; as a means of permitting compressed air to enter the chamber; and to provide means for attachment of a pressure gauge to permit ascertaining the pressure in the chamber.
Thus it was thought by the examiner that all of the claimed features of appellants’ device were disclosed by the references when combined or considered in the manner stated.
It will be noticed that in claim 1 on appeal the last phrase reads as follows: “the dimensions of said branch being proportioned with respect to the normal water pressure to produce resonance in said branch at the pulsation frequency of said pump.”
Appellants argue here, as they evidently did before the board, that this and the other claims containing similar limitations are patentable over McFarland since they distinguish'from, McFarland by calling for a side branch which is “tuned to be mechanically resonant at the frequency of the disturbing pulsation to be eliminated.” It is argued that McFarland does not disclose a resonant side branch tuned to the frequency of the disturbing impulse.
On this subject matter the board said:
* * * It is notecl that’the McFarland patent discloses at the bottom of page 2-and top of page 3, that it is to be understood that the device involves other .possibilities, such as being used in connection with pipe linos beyond the pump where sudden drafts, etc. give pulsations. This suggestion in the patent seems to indicate that this side branch mechanism with compressed air under a pressure of water in the main x>ipe line can bo applied to alleviate pulsations which may occur by reason of the action of the pump in the line. It is true that the patent does not mention that the length of this branch is iiroportioned with respect to the water, pressure to produce resonance in said branch at the pulsation frequency, of'tile pump, but it is not apparent in what other way it wóuld influence the puísañon¡F~of the pump.
*847 In view of tliis disclosure, it is considered that the claims do not set out any structure patentably distinct from that of the McFarland patent since one of the purposes appears to be the same as that of applicants and it is believed that the claims do not distinguish structurally and patentably thereover.
Claim 11 is regarded as more specific than claim 1 inasmuch as it sets up - a definite mathematical formula for determining the length of the chamber or side branch so as to enable one to construct it so as to produce resonance in said branch at the pulsation frequency of the pump.
It seems to us that the applicants, being familiar with the means of relieving undesirable pressures and noises in conduits, have done nothing more than to have ascertained the cause of the noise and to have worked out a, formula for determining when the side chamber has the proper capacity to bring about the desired result. As is pointed out by the board, there is nothing about the structure of applicants which is new. The novelty, if any, stressed here is in knowing why side branches of certain kinds will solve the problem, and in the formula for use in ascertaining the result. It seems reasonable to conclude that McFarland, if his device will do what he says it will, constructed a side branch of proper dimensions so as to bring about a situation where there was a “resonance in said branch at the pulsation frequency of said pump,” and, as is suggested by the tribunals below, the fact that he did not disclose any formula to use in bringing about the desired result does not prevent his structure, which he clearly discloses, from having such anticipatory effect.
Concerning the McFarland patent the board said:
* * * It is true tliat the patent does not mention that the length of this branch is proportioned with respect to the water pressure to» produce resonance in said branch at the pulsation frequency of the pump, but it is not apparent in what other way it would influence the pulsations of the pump.
Appellants’ contention amounts to an assertion that they are entitled to have a monopoly of the right to make side branches in such water .piping systems which will accomplish the purpose of eliminating undesirable noises even though the prior art definitely discloses that this had been accomplished long before appellants made their disclosure. In fact, appellants’ counsel emphatically asserted that if the claims at bar were allowed, his clients would be privileged to sue one skilled.in the art who, in .installing a water conduit which was attached to a pump, happened to make a side branch, which was old in the art, of the proper dimensions so as to make a “resonance in said branch at the pulsation frequency of” the pump. . ’ . .
We think the claims on appeal were properly rejected, and the decision of the Board of Appeals is affirmed.