## 448

The **FLUOR CORPORATION, Limited,**
Plaintiff,

v.

**GULF INTERSTATE GAS COMPANY,**
Defendant.

Civ. A. No. 8247.

United States District Court
S. D. Texas, Houston Division.
July 16, 1957.

.———◆———

Arnold & Stidham, Thomas O. Arnold, Houston, Tex., and H. Calvin White and William W. Haefliger, Los Angeles, Cal., for plaintiff.

Vinson, Elkins, Weems & Searls, Joe E. Edwards, J. Vincent Martin and John C. Snodgrass, Houston, Tex., for defendant.

INGRAHAM, District Judge.

This is a suit for patent infringement, injunction and accounting for profits and damages brought by Fluor Corporation, Ltd., as plaintiff, against Gulf Interstate Gas Company, as defendant. The plaintiff asserts its claim against defendant under the Stephens patent, No. 2,405,100.

Plaintiff asserted infringement of claims 1, 2 and 9 to 12 of the Stephens patent, but by its briefs withdrew assertion of infringement of claim 2. However, by defendant's counterclaim, the validity of all claims of the Stephens patent was placed in issue. Plaintiff admits by reply brief that claims 3 to 7 do not define invention over the prior art.

The patent in suit relates to a pulsation dampener device which is connected in a pipe line leading to or from a gas compressor for the purpose of eliminating pulsations created by the compressor. The dampener device is constructed of two chambers connected by a pipe which are sized according to a particular design equation. This type of dampener is an acoustical filter.

Defendant's dampener consists of two chambers connected by a pipe which are sized according to an acoustical filter design equation.

The evidence establishes that long prior to the filing date of the Stephens patent, acoustical filters were well known and used for the purpose of eliminating pulsations created by compressors; these acoustical filters took various physical forms but all functioned in the same manner. Each was designed according to a basic mathematical design equation and each had a preselected cut-off frequency which determined the pulsation frequencies which would be eliminated.

The patentee, Stephens, is an engineer and, according to his testimony, he referred to the prior art literature which furnished him with the mathematical design equation included in the Stephens patent. With this information, it was only necessary for Stephens to select the cut-off frequency for the filter designed according to such equation, and this

selection was dictated by the frequency of the pulsations which it was desired to eliminate.

Defendant's dampener was designed by Taylor, an engineer, who, like Stephens, referred to the general knowledge which was available in the literature. Taylor found the same well-known acoustical filter and the same mathematical design equation in such literature and used this information in designing defendant's dampener.

Plaintiff has urged that the setting of the cut-off frequency of the filter in relationship to the fundamental frequency of the compressor distinguishes the Stephens invention over the prior art, but the fundamental frequency of the compressor is the same as the fundamental frequency of the pulsations in the line and every acoustical filter has its cut-off frequency related to the frequencies of the pulsations that are to be eliminated. In fact, in order for any acoustical filter to operate, its cut-off must be below the frequencies to be eliminated.

To hold the claims of the Stephens patent valid would be to take away from the public its right to go to the library, read the literature and then utilize the knowledge and disclosures of such literature. This I cannot do. "The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans." Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 153, 71 S.Ct. 127, 130, 95 L.Ed. 162.

In the light of the prior knowledge in the art, Stephens did what was obvious to a skilled engineer and made no invention. In re Mason, 87 F.2d 370, 24 C.C.P.A., Patents, 842; Dow Chemical Company v. Halliburton Oil Well Cementing Co., 324 U.S. 320, 328–331, 65 S.Ct. 647, 89 L.Ed. 973, 980.

I am of the opinion that the Stephens patent is invalid and cannot be held valid and infringed. Judgment will be entered in favor of the defendant.

The following are filed as Findings of Fact and Conclusions of Law:

### Findings of Fact

1. Plaintiff is engaged in the business of constructing and selling pulsation dampeners which, when connected in a line leading to or extending from a compressor, eliminate the effects of compressor-created pulsations. Plaintiff's dampener is a low pass acoustic filter having a cut-off point and frequencies below the cut-off point pass through the filter without attenuation while frequencies above the cut-off point are subjected to attenuation.

2. Defendant is in the business of transporting gas through a pipe line system and has constructed pulsation dampeners and applied the same to the lines leading to and extending from compressors for the purpose of eliminating the effects of compressor-created pulsations. Defendant's pulsation dampener is a low pass acoustic filter having a preselected cut-off point.

3. The Stephens patent-in-suit discloses the application of a pulsation dampener to a line leading to or extending from a compressor. The dampener illustrated in the patent consists of two chambers interconnected by a pipe or pipes and is a low pass acoustic filter. The size and relationship of the chambers and interconnecting pipe are determined by a well known acoustic filter design equation and the specification states that the cut-off frequency of the acoustic filter shall be set either at or below the fundamental frequency of the pulsations; when set below the fundamental frequency, the disclosure limits the setting of the cut-off to the range of "85%" of the fundamental frequency.

4. A compressor is a mechanism which subjects fluid to both compression and pulsating flow and internal combustion engines, blowers, and fans are compressors. (R. pp. 669; 678–79.)

5. Long prior to the filing date of the Stephens patent, it was common knowl-

edge that a compressor created pulsations at a fundamental frequency in accordance with the speed of operation of the compressor. (R. pp. 610–11.) It was also well known how to determine the fundamental frequency of the pulsations created by a particular compressor. (R. pp. 467; 484; 640.)

6. Low pass acoustic filters were well known in the art long prior to the filing date of the Stephens patent and the prior art disclosed two physical forms of acoustic filters. (R. pp. 1244–49.) One physical form of low pass acoustic filter has been referred to in this case as a "series flow type" while the other form has been referred to as a "branch type". There is no difference so far as function is concerned between the physical form referred to as a "series type" and the physical form referred to as the "branch type" and the acoustical art has identified both of these forms as a "branch type acoustic filter". (R. pp. 1095–1100; Def. Ex. 1A, No. 14.) Both physical forms are full equivalents, one of the other, both may be predesigned according to well known design equations and both may have a preselected cut-off to subject the frequencies above such cut-off to attenuation.

7. The identical low pass acoustic filter disclosed in the Stephens patent and the exact design equation for constructing the same was old and well known long prior to the filing date of the patent-in-suit, as evidenced by the prior patents and publications in Defendant's Exhibits 1, 1A, 12 and 71 and particularly the Olson Publications (Nos. 13 and 14, Def. Ex. 1, 1A). In order for a low pass acoustic filter to function in attenuating disturbing frequencies, the cut-off frequency of the filter must be set below the disturbing frequencies. (R. pp. 219; 472.)

8. Long prior to the filing date of the patent-in-suit, the combination of a low pass filter with a compressor for the purpose of attenuating frequencies above the cut-off frequency of the filter was well known and in general use, as evidenced by the activities of the Maxim

Silencer Company (Def. Ex. 1A, No. 28) and the prior uses of the Ohio Fuel Gas Co., the Ohio-Kentucky Co. and the use at the Crawford Compressor Station (Def. Ex. 72–73).

9. In 1927, Bourne of the Maxim Silencer Company designed an acoustic low pass filter in accordance with the well known design equation and applied said filter to a compressor. In so doing, Bourne set the cut-off frequency below the fundamental frequency of the pulsations created by the compressor (Def. Ex. 23) and the particular low pass filter designed by Bourne is the full equivalent of the low pass filter shown in the patent-in-suit, functioning in the same manner to produce the identical result of attenuating all frequencies above the cut-off frequency.

10. Compressors have been used in the gas industry for many years and although pulsations have always been created, such pulsations presented no vibration or noise problem because of the relatively low magnitude of the pressures. However, beginning in the early 1940's, pressures were increased and this resulted in vibration due to compressor-created pulsations becoming more evident. (R. pp. 20–21.) Plaintiff was in the business of constructing compressor stations for the gas industry for many years prior to 1943 but conducted no research work nor sought no solution for eliminating the effects of compressor-created pulsations until it gave Stephens the assignment of designing a pulsation dampener in 1943. (R. p. 588.)

12. Upon being given the assignment of designing a pulsation dampener, Stephens studied the prior art, particularly the Olson publications (Def. Ex. 1, 1A, Nos. 13–14), copied the Olson design equation and duplicated the physical form of low pass acoustic filter shown by Olson to produce the dampener shown in the patent-in-suit; Stephens knew, prior to being given the assignment to design a dampener, that a compressor created pulsations and that the greatest amplitude of the pulsations was at their fundamental frequency as produced by

the compressor. (R. pp. 610; 640.) He, therefore, set the cut-off frequency of the low pass acoustic filter, which he copied from Olson, below the fundamental frequency of the compressor-created pulsations. Once Stephens decided to apply the Olson low pass filter to a compressor, he had no choice (R. p. 609) as to where to set the cut-off frequency of the filter because, in order for the filter to accomplish its purpose, the cut-off had to be placed below the fundamental frequency of the pulsations created by that compressor.

13. The application of a low pass acoustic filter to a gas compressor as disclosed in the patent-in-suit presented no different problem than the application of a low pass acoustic filter to any other type of compressor, since the filter will function to attentuate all frequencies above its preselected cut-off regardless of the particular source of the pulsations.

14. The Patent Office failed to consider the most pertinent prior art (Def. Ex. 1, 1A, 12) during the prosecution of the patent-in-suit. (Def. Ex. 10, 11.)

15. Plaintiff does not design its commercial pulsation dampeners in accordance with the disclosure of the patent-in-suit (R. pp. 501–506; 539–542) and any commercial success which plaintiff has enjoyed is not due to the teaching of said patent.

16. Defendant's dampener was designed by Taylor, a relatively inexperienced engineer, who upon being given the assignment of designing the dampener, studied the prior art relating to low pass acoustic filters (R. pp. 332–333), followed the prior art equations to construct the filter and set the cut-off frequency of the filter below the disturbing frequency. Taylor's article (Pl. Ex. 23) includes the design equations of the prior art and conclusively shows that defendant's dampeners were constructed and used in accordance with the clear teachings of the prior art.

17. The cut-off frequency of defendant's dampeners was not set either at or within the range of "85% to 100%" of the fundamental frequency of the pulsations in the conduit. (R. p. 1151.)

Conclusions of Law

1. This court has jurisdiction of the parties and of the causes alleged in the complaint and counterclaim.

2. Plaintiff has the right, title and interest in and to the Stephens patent-in-suit.

3. Failure of the Patent Office to consider the most pertinent prior art upsets the presumption of validity of the patent-in suit.

4. Claims 1 to 12 of Stephens' patent No. 2,405,100 are invalid for want of invention because the application of a low pass acoustic filter or dampener to a conduit extending to or from a gas compressor for the purpose of eliminating the effect of compressor-created pulsation was obvious to one skilled in the art.

5. Claims 1 to 12 of Stephens' patent No. 2,405,100 are invalid as anticipated by the prior art because the prior art clearly teaches the application of a low pass acoustic filter or dampener to a conduit extending to or from a gas compressor for the purpose of eliminating the effects of compressor-created pulsations.

6. Claims 1 to 12 of Stephens' patent No. 2,405,100 are invalid because they purport to cover the old combination of a gas compressor with an old and well known acoustic filter without any change in the function of the elements of the alleged combination and without any new, surprising or unexpected result. Further, the application of an acoustic filter to a compressor is mere aggregation and does not constitute patentable invention.

7. In the design of its dampeners, defendant followed the teachings of the prior art and the claims of the Stephens patent cannot be construed in a manner to bring defendant's structure within them. Claims 1, 2 and 9 to 12 are not infringed.

8. The defendant's dampener does not have its cut-off frequency set either at or within the range of 85% to 100%

of the fundamental frequency of the pulsations and claims 1, 2 and 9 to 12 are not infringed.

9. The complaint should be dismissed.

10. A judgment for defendant on the counterclaim should be entered.

Copies hereof will be forwarded by the clerk to counsel of record, who will draft and submit judgment conforming herewith.