**FLUOR CORPORATION, Ltd., Appellant,**

v.

**GULF INTERSTATE GAS COMPANY,**
Appellee.

**No. 16985.**

United States Court of Appeals
Fifth Circuit.

Sept. 16, 1958.

H. Calvin White, Los Angeles, Cal., Tom Arnold, Arnold & Stidham, Houston, Tex., William W. Haefliger, Los Angeles, Cal., for appellant.

Joe E. Edwards, M. H. Gay, J. Vincent Martin, Houston, Tex., Vinson, Elkins, Weems & Searls, John C. Snodgrass, Houston, Tex., of counsel, for appellee.

Before RIVES, BROWN and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

The district court held invalid all claims, 1 to 12, inclusive, of the Stephens Patent No. 2,405,100.[1] In the opening paragraph of appellant's brief, it is stated:

"Fluor ultimately asserted validity and infringement of claims 1 and 9 to 12 of the patent, which Gulf denied, and Gulf by its counterclaim asserted invalidity of all the claims in the patent, which assertion was denied by Fluor except as to claims 3 to 7."

This Court is asked to review that part of the decision which holds invalid claims 1, 2, and 8 to 12, inclusive, of the patent.[2]

---

1. The full findings of fact, conclusions of law, and opinion of the district court are reported in 152 F.Supp. 448, et seq.

2. Claims 1 and 2 read as follows:

"I claim:

"1. In combination with a gas compressor, apparatus for dampening pulsations in a gas stream having pulsating flow created by the compressor, comprising a pair of relatively large pulsation absorbing chambers having corresponding minimum volumes as defined in the equation below and connected in series with the compressor, and a circular cross-section conduit forming an acoustical inductance passage interconnecting said chambers, the volumes of said chambers and the dimensions of said passage having pretermined values substantially in accordance with the following equation:

$$\frac{L}{R^2} \times V = \frac{C^2}{\text{substantially } 78.674F^2}$$

wherein

$L$ = length of said passage in inches,

$R$ = radius of said passage in inches,

$V$ = minimum volume of each chamber in cubic inches,

$C$ = substantially the velocity in feet per minute of sound in the gas,

$F$ = a selected value for the fundamental frequency per second of pulsations created in said gas stream by the compressor.

"2. Apparatus as claimed in claim 1, in which 'F' has a value within the range of 85% to 100% of said fundamental frequency."

Claim 8 reads as follows:

"8. In combination with a gas compressor, apparatus for dampening pulsations in a gas stream having pulsating flow created by the compressor, comprising a pair of relatively large pulsation absorbing chambers connected in series with the compressor so that the gas flows through both chambers continuously and at a substantially constant rate, means forming relatively restricted acoustical inductance gas passage means interconnecting said chambers, and a valve in said gas passage means, the volumes of said chambers and the dimensions of said inductance passage means being such as to cause substantial elmination in the gas flowing therethrough of pressure pulsations (##) at the fundamental frequency created by the compressor."

Claim 9 is the same as Claim 8 down to the insertion of the mark (##), and then proceeds: "at the fundamental frequency created by the compressor and at the higher harmonics of that frequency."

Claim 10 reads as follows:

"10. The combination comprising a piston-type compressor, a pipe line connecting with the compressor and within which pressure pulsations are created in a gas stream by the compressor opera-

The patent is concerned particularly with the problem of eliminating the pressure pulsations created in gas lines by gas compressors. Pulsation problems in gas compressor plants became serious about 1940.[3] In 1942, appellant created a research division to meet problems such as that of this pulsative flow and attendant vibration. Sometime in 1943, the manager of the research division called in Mr. Stephens, later the patentee, and assigned to him the problem of eliminating the trouble.[4] Stephens' study and research culminated in the patent in suit for which application was made on January 11, 1944. The device effectively solved the problem, and proved commercially successful.

■ The district court held the claims of the patent invalid, because the device was obvious to one skilled in the art, be-cause it was anticipated by the prior art, because all elements of the combination were old and well known and their functions produced no new, surprising or unexpected results, and because the application of an acoustic filter to a gas compressor does not constitute patentable invention. After careful study and consideration, we agree.

Some experience and investigation were necessary to identify that the most usual source of the objectionable pressure pulsations was the intermittent gas displacements by the pistons of the compressor.[5] In its brief, appellant concedes, as it must, that "The compressor, being the troublemaker, of course had been known in full detail."

In each of the claims (footnote 2, supra) the compressor is referred to as one element of the combination patent. More

---

tion, and a pair of relatively large pulsation absorbing chambers connected in series in said line so that the gas flows through both chambers continuously and at a substantially constant rate, and pipe means interconnecting said chambers and forming relatively restricted acoustical inductance gas passage means, the volumes of said chambers and the dimensions of said passage being predetermined to cause substantial elimination in said gas stream of pressure pulsations (##) at the fundamental frequency created by the compressor and at the higher harmonics of that frequency."

Claim 11 is the same as Claim 10 down to the insertion of the mark (##), and then proceeds: "in the frequency range of from about 85% to 100% of the fundamental frequency created by the compressor."

Claim 12 reverts to and is the same as Claim 8 down to the insertion of the mark (##), and then proceeds: "in the frequency range of from about 85% to 100% of the fundamental frequency created by the compressor and also at the higher harmonics at that frequency."

3. Mr. Fluor, appellant's president, testified:
"A. Well, the vibration in the piping system was in evidence in every compressor plant that we had anything to do with, and because of low pressures during the early days, that is in the first part of the twenty-year period that I referred to, from 1920 to 1940, the pressures were low, and so as a result the vibrations caused by the pulsative flow of the gas were not too serious, and that is particularly on the low pressure plants and the smaller plants, and as a result the pulsations or vibrations of the piping could be contained, not eliminated, but the pipes could be held in place by the use of steel straps around the pipes anchoring them to the foundations on which they rested."

4. Stephens' testified:
"A. As I recall his conversation amounted to substantially this: 'With your background in mathematics, there should be some mathematical solution to this problem. I wish you would put some time toward that solution.'"

5. Mr. Fluor testified:
"* * * We built a large truck that contained all this equipment and we started wherever there was trouble in assisting plants to make tests, and I could readily determine what was the trouble. In most cases, the vibration is caused by the pulsative flow of the gas, but it might be the whole compressor shaking or certain parts of the compressor. In some instances, we have gone in and tested and found it was not the pulsative flow of the gas that caused that particular trouble, but foundations or soil conditions were not right, and by this testing equipment we were able to put our finger, so to speak, on the trouble."

accurately, we think, the compressor was the source of pulsations causing the trouble intended to be corrected by the patented device. The useful part of the patent consisted solely of the dampener, the low pass acoustical filter.

Appellant concedes also, as it must, that, "As applied to the familiar problems of sound reduction or muffling, the acoustical filter per se had been known, either actually or presumptively, to all engineers skilled in this art."[6] Appellant's contention, as we understand it, is that, however well known the compressor had been and however extensive had been the application of the acoustic filter to the usual purposes of sound muffling, the application of the filter to attenuate high energy gas pulsation required the exercise of the faculty of invention.

The district court found (Finding of Fact 12, 152 F.Supp. 450) that, after being assigned to the task of eliminating the trouble, Stephens studied the prior art, particularly an article published in 1940 by Harry F. Olson, E.E., Ph.D., on "Elements of Acoustical Engineering," and "copied the Olson design equation and duplicated the physical form of low pass acoustic filter shown by Olson to produce the dampener shown by the patent-in-suit." A comparison of the Olson publication with the patent leaves no reasonable doubt as to the correctness of that finding. That finding teaches further that the use of so-called acoustic filters is not confined to sound muffling. The Olson article states that "Acoustical and mechanical wave filters are becoming very important for use in noise reduction and control of vibration in all types of machinery and appliances."

■ It is not invention to use an old process or an old machine for a new and analogous purpose.[7] Here the use of the old device was analogous to its former use, was taught in the prior art, and produced only the result which might have been anticipated.[8] It did not involve an exercise of the inventive faculty.[9] That conclusion is not negatived by evidence of unsuccessful efforts upon the part of a few others not shown to be familiar with the specific prior art,[10] nor can commercial success supply the lack of invention.[11]

The judgment is

Affirmed.

6. Some of the prior patents disclosing the use of acoustic filters of dampeners to eliminate pulsations are: Larkins No. 1021254, March 26, 1912; Stewart No. 1692317, November 20, 1928; Bourne No. 1720507, July 9, 1929; Maxim No. 1732943, October 22, 1929; Bourne No. 1756626, April 29, 1930; Mason No. 1874326, August 30, 1932; Bourne No. 1910672, May 23, 1933; Westhues (German) No. 614775, June 18, 1935; Haynes (British) No. 432372, July 25, 1935; Kluge (German) No. 617831, August 29, 1935; Nichols No. 2229119, January 21, 1941; Chipley No. 2241010, May 6, 1941.

7. See the many cases collected in Vol. 1, Walker on Patents, Deller's edition, Sec. 43, pages 226–234, and in 69 C.J.S. Patents § 65.

8. Particularly might the results be anticipated, since the acoustic filter design had been previously used to eliminate pulsations in natural gas lines where the pulsations created difficulty in meter readings. These pulsation eliminators were used by United Fuel Gas Co., by Ohio-Kentucky Gas Co., and at the Crawford Compressor Station of the Ohio Fuel Gas Co.

9. See Potts v. Creager, 1895, 155 U.S. 597, 608, 15 S.Ct. 194, 39 L.Ed. 275.

10. Toledo Pressed Steel Co. v. Standard Parts, 1939, 307 U.S. 350, 356, 59 S.Ct. 897, 83 L.Ed. 1334.

11. Great Atlantic & Pacific Tea Co. v. Supermarket Corp., 1950, 340 U.S. 147, 153, 71 S.Ct. 127, 95 L.Ed. 162.