**ZERO MANUFACTURING COMPANY, Inc., Plaintiff,**

v.

**MISSISSIPPI MILK PRODUCERS ASSOCIATION, Defendant.**

United States District Court
S. D. Mississippi,
Jackson Division.

April 10, 1964.

James Leon Young, Jackson, Miss., Mason, Mason, & Albright, Washington, D. C., for plaintiff.

McIntyre & McIntyre, Brandon, Miss., Edmund Rogers, St. Louis, Mo., for defendant.

MIZE, District Judge.

This is an infringement patent suit by the Zero Manufacturing Company, Inc., a concern which manufactures bulk milk vacuum tanks and holds patents relating to such tanks, against the Mississippi Milk Producers Association, a Mississippi cooperative association which has sold like bulk milk vacuum tanks manufactured by the Paul Mueller Company. The Paul Meuller Company has undertaken the defense of this case.

The patents involved are United States Letters Patent Reissue No. 24,162, issued June 5, 1956, to G. R. Duncan which relates to a vacuum container milking system and apparatus therefor, and United States Letters Patent No. 2,873,722, issued February 17, 1959, to L. L. Duncan, et al. which relates to a particular opening in the bulk milk tank. Both patents have been assigned to Zero Manufacturing Company, the plaintiff herein.

Plaintiff contends that defendant infringed both of the foregoing patents by selling the bulk milk vacuum tank manufactured by the Paul Mueller Company together with apparatus therefor. The plaintiff contends now that it is entitled to a preliminary and final injunction against any further infringement by the defendant.

In September of 1952 Mr. Duncan applied for a patent on a vacuum container milking system and apparatus therefor which he had developed. In a spirited prosecution, the application was considered and rejected on three occasions, June 12, 1953, January 26, 1954 and March 15, 1954, but finally, on May 20, 1954, an allowance was issued. In the course of the prosecution several references were considered by the Examiner. These references included Mr. Duncan's previous patents wherein he applied a vacuum system to milk cans, and the U. S. patents to Devore, Bannister, et al., Wachowitz, McGovern and Greene, together with a French patent No. 963,212, and a publication concerning the Byvac milking system, all of which involved the utilization of vacuum within a milk container whereby milk was drawn from the farm animal to the container. Several other patents were also cited. Following allowance, the patent was issued as No. 2,702,019 on February 15, 1955.

In the autumn of 1953 Duncan's invention of the bulk milk vacuum tank was introduced to the trade. It was financially successful.

Less than one year following the issuance of patent No. 2,702,019 Duncan, on January 10, 1956, applied to have his patent reissued with additional claims. This application was initially rejected as to the added broader claims, but was eventually allowed and reissued June 5, 1956.

In bulk milk tanks, accessibility for cleaning and inspection purposes is important. The original openings of plaintiff's tank were rectangular with radius corners. Duncan found that they could advantageously substitute an oval "Swoop-down" opening structure for the rectangular openings with sloping interior portions. This became the subject matter of Patent No. 2,873,722, which was applied for on November 22, 1957. The application was initially rejected May 16, 1958, with the Examiner contending that there was no invention involved in shaping the apparently elliptical opening enclosure members so that they would take the contour of the opening in the cited Schravesande patent.

Defendant contends that the patents in issue are invalid because not patentable in view of the prior art. It also denies infringement. It contends the '722 patent is invalid because it claims an ag-

gregation and cites the case of Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162. It also contends that the presumption of validity is destroyed by the failure to cite patents showing the prior art.

Following the submission of this response, the application was allowed and it issued as a patent February 17, 1959.

The reissue patent, No. 24,162, relates to a refrigerated vacuum tank milking system. It comprises two general parts: (1) a milking system, and (2) a refrigerating system.

In this reissue patent the milk lines lead from teat cups and are connected to the interior of the milk receptacle. The vacuum line, which is connected to a vacuum source, draws and maintains a vacuum on the interior of the milk receptacle. The vacuum thus maintains a vacuum on the interior of the milk receptacle and on the milk lines to draw milk into the receptacle.

The refrigerating system of the reissue patent consists of a compressor-condenser with a copper cooling tube leading from the compressor-condenser and wrapped around the outer surface of the milk receptacle. The compressor-condenser circulates refrigerant through the copper tube across the surface of the milk receptacle and back to the compressor-condenser. This cools the milk receptacle. The second part of the refrigeration system is the milk cooler which consists of a separate box with insulating walls in which the milk receptacle is placed. As the milk receptacle is cooled, the milk cooler will retain the cooling for more efficient refrigeration. There is an agitator or stirrer driven by a motor in the bulk milk receptacle for the purpose of circulating the contents for uniform cooling.

The testimony at the trial revealed that the patent office Examiner cited several prior art patents against the application of the Duncan reissue patent, but that neither the Uphaus patent No. 1,603,429, issued on October 19, 1926, nor the Mc-Donald patent, No. 2,207,928, issued on July 16, 1940, was cited.

The Uphaus patent discloses a complete vacuum milking system. The milk lines that lead from the teat cups are connected directly to the interior of the milk receptacle, which is a large cylindrical tank. The vacuum line is connected directly to the interior of the receptacle to maintain a vacuum in the receptacle and to draw milk into the receptacle from the teat cups. The Uphaus patent has no refrigerating means.

The McDonald patent also discloses a complete vacuum milking system. The milk line leading from the teat cups is connected directly to the interior of the milk receptacle. The vacuum line is connected to the interior of the milk receptacle to maintain a vacuum therein while drawing the milk into the receptacle from the milk line. Although no refrigerating means is shown, McDonald recites that his apparatus can be used with or without a cooler.

The operation of the vacuum milking system of both Uphaus and McDonald is exactly the same as that disclosed by the Duncan reissue patent. The testimony is abundantly clear that anyone with ordinary skill in the art could apply a refrigerating system to a vacuum bulk milk tank like either Uphaus or McDonald.

Refrigerated atmospheric bulk milk tanks were widely known and used prior to the Duncan reissue patent. Let's look at two examples that were cited by the Examiner against the Duncan reissue patent.

First, Wachowitz, No. 2,266,134, issued in 1941, shows a cylindrical, horizontal tank, having domed ends, an agitator, an inner shell surrounded by insulation and an outer shell. It has a refrigeration coil arrangement.

Next, McGovern, No. 2,617,264, shows a horizontal, cylindrical tank with domed ends and an inner shell surrounded by insulation and an outer shell. It has a refrigerating means between the inner and outer shells.

After reviewing the prior art patents as revealed at the trial and in the briefs, the Court finds as a fact that one with the ordinary skill of the art could add a refrigerating means, as taught by Wachowitz or McGovern, to a vacuum bulk milk tank as taught by Uphaus or McDonald. Conversely, one with the ordinary skill of the art could add a vacuum milking system, as taught by Uphaus and McDonald, to a refrigerated atmospheric bulk milk tank as taught by Wachowitz and McGovern.

We come now to the Duncan patent, No. 2,873,722, issued February 17, 1959, which relates to a particular opening in the bulk milk tank. This opening is referred to as a "swoop down" opening. The opening is eliptical in shape, with the sides lower than the ends. It is alleged that the opening makes for better visibility inside the tank and better cleanability of the tank.

In the Nitch Patent, No. 1,437,857, issued December 5, 1922, which was not cited by the Examiner, an opening in a cylindrical boiler is shown of eliptical shape, with swoop down sides. The utility of the Nitch opening is for better cleaning and better inspection after cleaning. Although it is not a milk tank, the purpose of the Nitch opening is substantially the same as that shown in the Duncan patent, No. 2,873,722.

Testimony at the trial revealed and the Court finds as a fact that it is impossible to make a hole in a cylindrical tank without having the sides lower than the ends. The Court also finds as a fact that the swoop down opening for the purpose of inspection and to facilitate cleaning of the tank was taught by F. O. Nitch patent No. 1,437,857.

■■■ I have considered the record, the briefs, and the authorities cited therein and am of the opinion that the patents in question are invalid. The main issue in the case, as it narrows down, presents simply a question of fact, and the question for determination is whether the patents are invalid. If they are invalid, then it is not necessary to determine whether or not there was infringement, because if I am correct in holding their invalidity, they could not be infringed.

■ The law is well settled that it is not invention to use an old process or an old machine for a new and analogous purpose. The claimed patents here in question were clearly taught in the prior art and a result was there reached which well could have been anticipated. There was no inventive faculty. Fluor Corp., Ltd. v. Gulf Interstate Gas Co., 5 Cir., 259 F. 2d 405.

■■ Moreover, it is well settled that there is a presumption of validity which attends the grant of letters patent by the Patent Office, but such presumption can be overcome if invalidity is proved beyond a reasonable doubt. The fact that there has been commercial success will not create patentability, for creative genius is needed. The defense of anticipation in the art precludes creative genius that is essential to patentability. Fairchild v. Poe, 5 Cir., 259 F.2d 329.

In this case the prior art, as has been discussed in my findings of fact, precludes the validity of the patents here in question. In the case of Great Atlantic & Pacific Tea Company v. Supermarket Equipment Corporation, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, it is held that the mere combination of a number of old parts or elements which in combination perform or produce no new or different function or operation than that theretofore performed or produced by them is not patentable invention. In this case here before the court the patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly. This will not do, as was held in the A & P case, supra.

The patents in question not being valid, it is not necessary to discuss the law with reference to infringement or copying. All those matters have been considered carefully in this case, along with all of the evidence and exhibits, and after con-

sideration thereof, I am of the opinion that the patents are invalid, and now make the following conclusions of law:

## CONCLUSIONS OF LAW

1. The Court has jurisdiction.

■ 2. The law is well settled that the grant of a patent creates a prima facie presumption of validity. However, the presumption of prima facie validity is greatly weakened, if not destroyed, when pertinent prior art is not considered by the patent office. Gomez v. Granat Bros., 9 Cir., 177 F.2d 266 (1949); Patent was not entitled to presumption of validity over prior art which Examiner did not note. Nordell v. International Filter Co., 7 Cir., 119 F.2d 948 (1941). In the present case the Examiner did not cite the following patents:

| Uphaus | No. | 1,603,429 |
| McDonald | No. | 1,207,928 |
| Nitch | No. | 1,437,857 |

■ In so far as there has been an "anticipation", meaning disclosure in the prior art of a thing substantially identical with the art or instrument for which a patent is sought, the inventor is not entitled to a patent, and a patent, if granted, is invalid. 69 C.J.S. Patents § 20.

In Fairchild v. Poe, 259 F.2d 329 (1958), Judge Wisdom of the Fifth Circuit Court of Appeals quoted Lyman Gun Sight Corp. v. Redfield Gun Sight Corp., 87 F.2d 26, (1936), Tenth Circuit, as follows: "Where a patent includes a combination of elements, it is not necessary, in order to establish anticipation, that all of the elements be found in a single earlier patent or in a single device previously in general use, and it is enough if evidence, taken as a whole, discloses that all of the claimed elements are found in different prior patents in the art or in different devices previously in general use, and no new functional relationship arises from their combination."

3. The Court concludes as a matter of law that the vacuum milking system of the Duncan reissue patent, No. 24,162, was anticipated by both Uphaus patent No. 1,603,429 and McDonald patent No. 2,207,928.

■ 4. The question of invention is determined in the light of all the knowledge of the prior art, whether or not the alleged inventor actually had such knowledge; and invention is not present if a person skilled in the art, having the prior disclosures before him, would find the process or device in question obvious. 69 C.J.S. Patents § 53b.

■ Patentable invention does not reside in a method or device which is the product of mere mechanical skill representing the solution of a problem which could have been similarly solved by those skilled in the art to which it relates. 69 C.J.S. Patents § 55.

5. The Court concludes as a matter of law that it would not require inventive skill, but merely the ordinary skill of the art to add a refrigerating means to a vacuum bulk milk tank as disclosed in Uphaus and McGovern. The art of refrigerating bulk milk tanks was taught in both the Wachowitz patent, No. 2,266,134, and the McDonald patent, No. 2,617,264. The Court further concludes that only the ordinary skill of the art would be required to transform the refrigerated atmospheric bulk milk tanks of Wachowitz and McGovern into vacuum bulk milk tanks as taught by Uphaus and McDonald.

6. As to the Duncan patent, No. 2,873,722, the Court concludes as a matter of law that, in view of the teaching of Nitch patent, No. 1,437,857, only the ordinary skill of the art would be required to put such an opening in a bulk milk tank as seen in the Duncan patent.

7. The Court concludes as a matter of law that both the Duncan reissue patent, No. 24,162, and the Duncan patent No. 2,873,722, are invalid for the afore-mentioned reasons as heretofore stated.

The law is well settled that commercial success cannot render valid a patent otherwise invalid.

■ 8. On the question of infringement, the Court concludes as a matter

of law that "[o]nce a court in an infringement suit finds that patent is invalid, it need not proceed to determine the question of infringement, since a finding of invalidity precludes existence of anything which could have been infringed." Thys Co. v. Oeste, D.C., 111 F.Supp. 665 (1953), and the authorities therein cited.

The litigants in this case have been sincere in their contentions and if I am correct in my holding, the decision will be valuable to both parties in that they know where they are. For that reason, I will tax the costs that accrued at the instance of plaintiff against the plaintiff and the costs that accrued at the instance of the defendant will be taxed against the defendant.

An order may be drawn in accord herewith.