**Application of Andre VARGA.**

**Patent Appeal No. 74–517.**

United States Court of Customs and Patent Appeals.

March 13, 1975.

Stuart A. White, New York City, atty. of record, for appellant. Elliott I. Pollock, Washington, D. C., of counsel.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents. Fred E. McKelvey, Washington, D. C., of counsel.

**1176**

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

This appeal is from the decision of the Board of Appeals of the Patent and Trademark Office (PTO) affirming the examiner's rejection of claims 2, 3, 4, and 7 of application serial No. 871,494, filed Nov. 14, 1969,[1] to reissue Patent No. 3,003,195 for "METHOD AND APPARATUS FOR THE TREATMENT OF COTTON FIBRES," issued Oct. 10, 1961,

to Andre Varga, assignor to Carding Specialists (Canada) Limited. We affirm in part and reverse in part.

*The Invention*

Claims 2–4 define apparatus for treating cotton fibers preparatory to spinning. Claim 7 defines a method of treatment comprising certain sequential steps and includes spinning as the last step. Claim 3 will give a general idea of the invention when read in conjunction with Fig. 1 of the drawings, certain reference numerals from which we have inserted in the claim:

*Fig. 1*

3. A cotton carding machine having a doffer [10], a pair of calender rollers [16, 18], a pair of smoothly ground ironing rollers [24, 26] between said doffer and said calender rollers adapted to receive a carded web [28] in substantially full width from the doffer, load means [33] pressing said ironing rollers together with sufficient force to crush small impurities in said web, drive means [30, 32, 34, 36] rotating said ironing rollers at a speed sufficient to take up slack in the web [28] between the doffer and said ironing rollers, and drive means [38, 42, 44] rotating said calender rollers [16, 18] at a sufficiently greater surface speed than said ironing rollers [24, 26] to cause relative longitudinal fiber movement in said web between said crushing and calender rollers.

A doffer is that part of a cotton carding machine which delivers the web to subsequent apparatus such as the calender

---

1. There appears to have been an earlier reissue application serial No. 554,237, filed Apr. 22, 1966, which was abandoned.

rollers 16, 18, all of which is old in the art. Appellant's invention has to do with the addition of the ironing rollers 24, 26 between the doffer and the calender rollers and the speeds at which these two sets of rollers are run relative to each other and to the doffer.

Appellant has stated two reasons for using the ironing rollers. According to his specification, the first is to smooth the cotton fibers; the second is to crush small "impurities" such as particles of cotton seeds and leaves to aid in their removal. It gives two reasons for the drafting (claimed as "relative longitudinal fiber movement") caused by running the calender rolls at a higher speed than the ironing rollers. First, it assures getting the web away from the ironing rollers to which it tends to adhere because of stickiness or static; second, it tends to set free the crushed impurities so they will fall out of the web.

### References and Rejections

The following references are relied on to support various rejections of all appealed claims for obviousness under 35 U.S.C. § 103:

| Harmel | 318,730 | May 26, 1885 |
| Chantler | 2,326,331 | Aug. 10, 1943 |
| Barron (British Patent) | 616,815 | Jan. 27, 1949 |

Marshall, G., "The 'Peralta' Machine in Woollen Carding," *The Textile Manufacturer*, November, 1948, pages 520–523.

The rejections under § 103 are as follows:

(1) Claims 2 and 3 on Barron in view of Chantler.

(2) Claim 4 on Barron in view of Chantler further in view of Harmel.

(3) Claim 7 on Barron in view of Marshall.

There is a further rejection of claims 2 and 3 only, referred to herein as the *Blonder-Tongue* rejection. It is predicated on the decision of the Supreme Court in Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), and a holding of invalidity of claims 2 and 3 in Carding Specialists (Canada) Ltd. v. Lummus Cotton Gin Co., 234 F.Supp. 444 (M.D.Ga.1964). The judgment in the latter case was not appealed. Claims 2 and 3 of this reissue application are claims of the original patent on which suit was brought against Lummus.

This *Blonder-Tongue* rejection was made, substantially at the request of the Board on an apparently *sua sponte* remand to the examiner, after appellant had filed a brief in reply to the Examiner's Answer. Agreeable to the board's request, in a second Examiner's Answer, a new ground of rejection of claims 2 and 3 was made on the ground of estoppel by virtue of the invalidity holding in *Lummus* under the law of the *Blonder-Tongue* case.

Appellant reportedly responded by saying the PTO cannot make a *Blonder-Tongue* rejection. In a third Examiner's Answer this was traversed, the examiner conceding that appellant must be given an opportunity to demonstrate, if he can, " ' * * * that he did not have a fair opportunity procedurally, substantively and evidentially to pursue his claim the first time.' *Blonder-Tongue, supra* at [169 USPQ] 521." The examiner said that in the two months allowed to respond to the new ground of rejection appellant had made no effort to make any such showing.

The board then took up the merits of the case and sustained all of the above-noted rejections.

One further important item of background information shows why the present reissue application was filed and on what basis it has been prosecuted. The case of Abington Textile Machinery Works v. Carding Specialists (Canada) Ltd., 249 F.Supp. 823 (D.D.C., 1965), was an action for declaratory judgment of patent invalidity and noninfringement against the assignee of the patent here sought to be reissued, in which suit the defendant (the real party in interest on this appeal) counterclaimed for infringement of the patent. It was decided subsequent to the decision in the *Lummus* case, supra, by the late Judge Jackson,

senior judge of this court, sitting by designation as a District Court judge. Judge Jackson, contrary to the judge in the earlier *Lummus* case in Georgia and after a full two-week trial, held claims 2–4 (which are the same as claims 2–4 here on appeal) to be valid but held claim 1 of the patent,[2] the sole process claim, "unpatentable over Chantler in view of Marshall." (These are the same references as listed above.) Appellant's brief says, "the present application for reissue was filed for the purpose of securing a narrower method claim commensurate with applicant's true invention as defined by Judge Jackson in the *Abington* case." That claim is claim 7, which reads:

> 7. In the production of cotton yarns of improved quality and cleanliness by the cotton system, the method of treating the cotton fibres which comprises, in sequence:
>
> (a) carding the fibres and forming them into a thin carded web;
>
> (b) passing said web through crushing rollers adapted to crush small impurities in the web;
>
> (c) subjecting said web on leaving said crushing rollers to a longitudinal drafting action sufficient to cause relative longitudinal fibre movement therein;
>
> (d) condensing said web into a sliver;[3] and
>
> (e) processing the fibres of said sliver into yarn by steps comprising drafting and spinning.

We thus have before us method claim 7 which has never been litigated and three machine claims which have been twice litigated and held both valid and invalid. While the record and briefs contain copious references to and quotations from the prior lawsuits and the testimony and opinions therein, particularly from the *Abington* case, the records in those suits are not before us. Nor has any of the evidence in those suits been introduced as evidence by appellant into the record of this reissue application. Our task is merely to pass upon the examiner's rejections which were affirmed by the board, and our decision must be based "on the evidence produced before the Patent Office." 35 U.S.C. § 144. That *evidence* consists only of the references cited and relied on, and the *judgments* entered in the *Lummus* and *Abington* cases, not of the testimony from those trials gratuitously included in the printed record and briefs by appellant and the PTO. We will say, however, that our understanding of the references and of the claimed invention has unquestionably been improved by reading the unusually voluminous observations of others thereon presented in the record and briefs by way of argument.

## OPINION

### Obviousness of Claims 2–4

Appellant has conceded that if claim 3 is unpatentable, claim 4 could not be sustained, and he has treated claim 3 as exemplary. Claim 2 is somewhat broader than claim 3, set forth above, in not calling for "smoothly ground" ironing rollers or "load means." Instead, it calls for "crushing rollers." The rejection of both claims 2 and 3 is for obviousness in

---

**2.** Claim 1 of the patent, eliminated on this application, reads:

A method of treating cotton fibres comprising the steps of forming the fibres into a thin carded web, passing said web through crushing rollers adapted to crush small impurities in the web and subjecting said web on leaving said crushing rollers to a longitudinal drafting action sufficient to cause relative longitudinal fiber [sic] movement in the web.

**3.** Webster's Third New International Dictionary defines "sliver" in the sense here used as "2a(1): a loose soft untwisted strand or rope of textile fiber produced by a carding or combing machine and ready for drawing or roving (2): a similar strand of wool fiber delivered by a carding machine and ready to be spun into yarn." "Roving" is defined as "1a: a slightly twisted roll or strand of textile fibers b: material in an intermediate stage between sliver and yarn 2: the final process of reducing and drawing out sliver preliminary to spinning."

view of the Barron and Chantler patents.

Barron is relied on for its disclosure of *cotton* carding machines having the usual doffers and calender rollers, as called for in claims 2 and 3. Barron's concern, however, was with his own method of processing *wool* on a variety of cotton machines. No crushing or ironing rollers of any kind are suggested.

Chantler is relied on for its disclosure of crushing rollers operating on a fleece delivered from a carding machine and taken by the calender rollers from the crushing rollers, although Chantler's concern was with another aspect of the apparatus which assists in gathering the fleece into a sliver. Chantler did not invent the crushing rollers. The patent states:

> As is known in the textile trade, crushing machines for crushing burrs, etc., employ heavy or heavily weighted rollers to act upon a passing fleece and it is known to interpose such a crushing machine between two woolen or two waste carding machines according to the class of material dealt with.

We agree with appellant that although Barron shows conventional cotton carding machines it shows no ironing or crushing rolls at all, but the examiner's position was that there would be nothing unobvious in adding the well-known crushing rolls disclosed by Chantler to a cotton carding machine, such as shown by Barron. It was further his position that Chantler discloses positioning crushing rolls just in advance of the calender rolls to receive a carded web and that adjusting the speeds to meet the terms of the claims would be "well within the realm of one skilled in the art." The examiner quoted from Judge Jackson's opinion in *Abington* with respect to speeds:

> The Court discovers ample evidence in the record to find that determination of the optimum relative surface speeds of the doffer, crush rolls, and calender

rolls would be well within the ordinary skill of a typical cotton mill card operator, who would vary the surface speeds according to prevailing conditions.

The board found the examiner's rejection of claims 2 and 3 for obviousness in view of Barron and Chantler to be proper and so do we. The same is true of claim 4, as to which Harmel was additionally applied, but we need not discuss it in view of appellant's concession.

We have carefully considered appellant's arguments against the rejection of claims 2–4 under § 103 but find them unpersuasive. First, there is considerable argument based on Chantler's disclosure of PERALTA[4] crush rolls which, it is said, could not be used in a cotton carding machine such as shown in Barron; but Chantler nowhere refers to PERALTA rolls, which are of a special kind. As the Harmel reference shows, crushing rolls of various kinds have been known since 1885, PERALTA rolls only since 1937, according to appellant. Second, appellant argued from "Barron's own failure to adapt the prior crushing principle described by Chantler * *." We think no logical deduction about what would be obvious can be drawn from what Barron did *not* disclose, especially in view of appellant's characterization of Barron's disclosure as "highly atypical and bizarre," and as a "uniquely unusual and bizarre utilization of a cotton card."

In determining obviousness of the subject matter of claims 2–4, we note that these claims are directed to "A cotton carding machine." The location of the crushing or ironing rollers *in that machine* is specified as between the doffer and the calender rollers and the relative speeds of doffer, crusher, and calender are defined. But there is no limitation in these claims tying them to appellant's system in which the alleged "many valuable advantages" are to be found, where-

---

**4.** PERALTA rolls are discussed in the Marshall reference. The record shows that a Spaniard named Antonio Peralta Albero patented pressure rolls in the United States in 1937, patent No. 2,075,156, not of record.

in, in the words of appellant's own specification (emphasis ours),

> After carding is finished the fibres are stripped from the card in the form of a thin carded web, which is then condensed into a round fibrous mass called a sliver. Without further carding the sliver of cotton fibres is thereafter drafted and spun.

In other words, the ironing or smoothing with its incidental crushing is at the end of the carding process. As indicated below in our discussion of claim 7, this was an unobvious contribution but claims 2–4 are broad enough to read on a carding machine including the ironing or crushing rolls followed by a second carding machine. Chantler shows this structure. The machine claims are therefore directed to obvious subject matter. We note the comment in appellant's brief that "It is too bad that the Board gave such short shrift to claim 7 [the method claim], because in petitioner's view his invention is much more a process than a machine." (Emphasis ours.) We agree. We turn now to claim 7.

### Unobviousness of Method Claim 7

With the benefit of hindsight derived from two lawsuits, appellant has drafted a new method claim, to replace the original method claim held invalid in both actions, which conforms to the description of his invention and which we do not find suggested by the prior art references. That invention, as the preamble of claim 7 points out, is a method of producing cotton yarns of improved quality and cleanliness by the "cotton system." The description of the known cotton system is thus stated in the opening paragraph of the specification:

> In the production of cotton yarns by the cotton system cotton fibres are carded by means of a cotton carding machine, which may be either a single cylinder cotton card or equivalently a tandem cotton card. After carding is finished the fibres are stripped from the card in the form of a thin carded web, which is then condensed into a round fibrous mass called a sliver. Without further carding the sliver of cotton fibres is thereafter drafted and spun.

So much for what was known. Appellant then describes his inventive contribution:

> I have found that this process will be facilitated and the product improved if the surface of the cotton fibres is smoothed. If this is done, then the fibres will slide over one another more readily and fewer neps[5] will be formed during drafting and spinning.

> *     *     *     *     *     *

> According to this invention, the very thin carded web of cotton fibres is ironed to cause all or a substantial proportion of the individual fibres to be smoothed by passing it through ironing rollers and the web leaving the ironing rollers is subjected to a drafting action.

From the whole record it appears that carrying out this smoothing process by means of ironing rollers carries with it a bonus, as described in the next paragraph, which contributes greatly to the practical advantage and value of the process:

> In addition to the smoothing of the fibres, the effect of the ironing process, if the pressure is adequate, is to crush small impurities such as particles of cotton seeds and leaves present in the web, and this assists in the subsequent removal of the impurities.

> *     *     *     *     *     *

> The ironing and drafting can most conveniently be effected on the web of cotton fibres as it leaves the doffer of a carding machine, and before it is condensed in width to form a sliver for transfer to a subsequent operation, e. g. spinning.

The foregoing is the essence of the disclosure against which claim 7 must be construed. More details are, of course, given.

---

**5.** "Neps" are little knots of cotton fibers in this context.

The rejection of claim 7 under § 103 is on Barron in view of the Marshall article. We have carefully studied these references and fail to find in their disclosures, singly or collectively, any suggestion of the invention as above described. Barron does not disclose anything about the processing of cotton. He was concerned with the processing of wool on cotton processing machinery. Even as to the wool, there is no disclosure of any crushing or ironing at any point. The value of the reference is only in its disclosure of cotton carding machines which, of course, do no more than produce the known "thin carded web" referred to at "(a)" of Claim 7, to which appellant applies his invention.

The Marshall article, "The 'Peralta' Machine in Woolen Processing," was a paper read to the Huddersfield Textile Society and published in a British journal describing uses of the PERALTA machine which, the article says, came into use in 1938 and was at the time of the article in widespread use. Its primary purpose is to crush impurities in a wool web. It is a separate machine, not a part of a carding machine. The illustration of its use shows it between two carding machines. We find these passages significant:

> In the carder part of the machine, the crushed impurity should be lost, and for the most part it is * * *.
>
> *       *       *       *       *       *

It has already been pointed out that the "Peralta" crushes impurities, but does not remove them. It is the work of the carder or the parts of the machine following the "Peralta."

There is a passage in the article, relied on by the examiner, in which the author undertakes to dispel one or two "misconceptions," one of which is that the PERALTA cannot be used with blends containing cotton. He says:

> Actually "Peraltas" are running successfully on blends containing 100% cotton. Cotton fibre is not as resilient as wool and incorrect treatment might easily damage it, but if the web is sufficiently thin so that the impurities present are thicker than the web, and the pressure is correctly adjusted blends containing cotton can be treated with perfect success.

We fail to find in Marshall, however, anything to contradict appellant's assertion that "In every known instance of prior art crushing[,] such crushing was followed by a carding operation to *card* the crushed matter out of the fibrous mass to obtain cleaner yarn and cloth." This points up an important difference between the method of claim 7 and the prior art which we think makes appellant's method unobvious.

The solicitor, arguing from claim 1 which was held invalid, says that adding steps (d) and (e) in claim 7 does not render it patentable because they are old, and he also argues that by use of the word "comprising" in the preamble, claim 7 does not preclude additional carding either between steps (c) and (d) or as a part of step (d). Reading claim 7 in the light of the disclosure, as well as the prior art it was consciously drafted to distinguish from, we disagree with these contentions. First of all, claim 7 is clearly limited to the "cotton system," described in the specification, which claim 1 was not. The word "comprising" must be taken in context with the words, "in sequence," which convey the clear meaning of a continuous, connected series precluding intervening steps. We do not see how carding can take place in the course of condensing step (d). The record shows that condensing a carded web into a sliver is the antithesis of carding. And, finally, even though steps (d) and (e) are old—even conventional— their presence in the claim, taken with the introductory clause, serves to show a distinction over the prior art, namely, that after the production of the web in steps (a)–(c) in an ironed and drafted condition it is immediately condensed into a sliver and processed into a yarn. It is proceeding in accordance with claim 7 that clearly appears to be appellant's true contribution to the art and one which the prior art does not suggest.

We therefore hold claim 7 to be unobvious.

### CONCLUSION

Since we find the obviousness rejection of claims 2–4 to have been proper, it is unnecessary to consider the *Blonder-Tongue* rejection applicable only to claims 2 and 3, and in accordance with established policy we do not do so.

The decision of the board affirming the rejection of claims 2–4 is affirmed, and the decision affirming the rejection of claim 7 is reversed.

Modified.